**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| LONNIE K. MURRILL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. JRR-24-3074 |
| ROBERT S. DEAN, Warden, et al., | * | |
| Defendants. | * | |

***

# MEMORANDUM OPINION

Plaintiff Lonnie K. Murrill, currently incarcerated at Eastern Correctional Institution ("ECI"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants provided constitutionally inadequate medical care. ECF No. 1. The operative pleadings are the Amended Complaint and Supplements to the Amended Complaint. ECF Nos. 14, 17, and 21.

Defendants Dean, Simo, Adebayo and Kallon, filed Motions to Dismiss or, in the Alternative, for Summary Judgment. ECF Nos. 35 (Dean's Motion), 39 (Simo and Adebayo's Motion), and 46 (Kallon's Motion adopting the arguments set forth by Defendants Simo and Adebayo). Murrill opposed the motions. ECF No. 48,[1] 52, and 54. Dean, Adebayo, and Simo replied. ECF Nos. 49 and 51.[2] The Court has reviewed the pleadings and papers, and finds a

---

[1] Murrill titled this document "Motion to Respond to Dispositive Motion" but, upon review of the document, it appears to be an opposition Murrill was entitled to file without leave of Court. ECF No. 48. As such, the motion is denied as moot and the Court has considered the arguments advanced by Murrill.

[2] Also pending are Motions to Seal (ECF No. 37) and to Withdraw as Attorney (ECF No. 45), which are unopposed. The court is satisfied both are proper to be granted. Additionally, Defendant Dean filed Motions to Strike ECF Nos. 52 and 54 as improper surreplies. ECF Nos. 53 and 56. Those motions are denied. Given that three separate dispositive motions were filed by Defendants, it appears that Murrill, who is self-represented, intended to respond to each of those motions rather than file unauthorized surreplies. Lastly, Suggestions of Bankruptcy were filed by Defendants Adebayo and Simo, indicating that on May 8, 2026, YesCare Corp. petitioned for bankruptcy in the Bankruptcy Court for the United States District Court of the Middle District of Florida. ECF Nos. 57 and 58. However, Defendants have provided no evidence or argument that the automatic bankruptcy stay which applies to the YesCare Corp. has been extended to individually named Defendants, Adebayo and Simo.

hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons stated below, Defendants' Motions, construed as Motions for Summary Judgment, will be granted.

## I. BACKGROUND

### A. Plaintiff's Allegations

Murrill states that on April 6, 2023, while he was confined at Jessup Correctional Institution ("JCI"), he was placed on administrative segregation but his "keep on person" ("KOP") medications were not provided to him. ECF No. 14 at 5; ECF No. 17 at 1. Murrill states that Warden Dean is liable because he failed to have his officers and medical staff trained. *Id.* Additionally, Murrill alleges "they" have a policy not to provide Baclofen to inmates on lock up. *Id*. Murrill claims that he told "all the CO's & medical staff that my blood pressure meds were packed and I couldn't go to the window to pick up my Baclofen." *Id*. He specifically asserts that on April 11, 2023, Murrill advised RN Adebayo of the issue with his medications; similarly, NP Simo was advised on June 23, 2023, and NP Kallon October 17, 2023. *Id*.

On June 23, 2023, Murrill went to sick call and reported that he could not get his medication for muscle spasms and nerve pain. *Id*. Every day, he told officers that came to his cell that he needed his blood pressure medication from property, but they told him he needed to address that with medical. *Id*. Murrill states he filled out sick call slips, medication refill slips, and grievances, all to no avail. *Id*. In his view, the doctrine of respondeat superior applies and makes Warden Dean responsible. *Id*.

Murrill attaches to his Amended Complaint copies of documentation regarding his effort to file administrative grievances regarding his medical issues. He attaches his initial administrative remedy procedure ("ARP") dated November 8, 2023, which explains that on October 16, 2023, he had some type of sciatic seizure due to not receiving his blood pressure and pain medications,

which resulted in his falling, hitting his head on the toilet, and breaking his jaw. ECF No. 14-1 at 4. In another ARP, dated December 18, 2024, Murrill asserts he had broken his jaw a year earlier, was scheduled for surgery, but had not received the surgery. He also states he had not received his prescribed muscle relaxers. *Id*. at 5. Further, Murrill attaches a letter dated July 16, 2024, from the Inmate Grievance Office ("IGO"), denying his grievance regarding denial of his medication (*id*. at 1) and a copy of an inmate complaint form dated January 12, 2025, wherein he seeks referral for jaw surgery and to a sciatica specialist. *Id*. at 2. The response indicated that his referral was in process. *Id*. In a supplemental filing, Murrill provides his petition for judicial review appealing the denial of his grievance by the IGO, which includes copies of his grievances and the various responses to them. ECF No. 17-1 at 4-12, 31-35.

Murrill also provides copies of pertinent medical records demonstrating that on October 17, 2023, he reported to sick call that he had fallen in his cell and struck his head on the toilet. He was provided with pain medication and medication to stabilize his blood pressure, and was sent to the emergency room for further evaluation and treatment. ECF No. 17-1 at 13- 16. He returned to the institution the following day and was admitted to the infirmary. *Id.* at 17. He apparently remained in the infirmary through January 17, 2024, when he was discharged to segregation housing. During his stay in the infirmary, it was noted that surgery to repair his broken jaw was scheduled for December. *Id.* at 18, 52-53. He also provides copies of sick call slips he submitted in October of 2023 (*id*. at 21-22), daily Medication Administration Records ("MAR") for September and October 2023 (*id*. at 23-30), and additional sick call slips and related documents, including the result of the x-ray of his jaw. *Id*. at 36-53. In his second supplement, Murrill provides a timeline summary of his medical care. ECF No. 21.

As relief, Murrill seeks referral to a medical specialist regarding the injury to his jaw as well as compensatory damages. ECF No. 14 at 6.

**A. Simo, Adebayo, and Kallon's ("Medical Defendants") Response**

Carole Simo is a Certified Registered Nurse Practitioner ("CRNP") employed at JCI. ECF No. 39-2, ¶ 2 (Simo, Decl.). She explains that medications are designated either KOP, where the patient keeps the medication in his cell and self-administers them, or Direct Observation Therapy ("DOT"), meaning the patient must come to the medication window to receive the medication and take it in the presence of the nurse. *Id*. ¶ 6. Murrill's blood pressure medications were KOP while his muscle relaxer, Baclofen, was DOT. *Id.*

RN Sany Adebayo evaluated Murrill on February 6, 2023, in sick call in response to his complaint that he thought he had broken ribs. ECF No. 39- 5 at 10-11 (Medical Records). Murrill presented with a complaint of left rib pain for a week but stated it was improving. *Id*. He also reported he had broken ribs years ago when he fell due to sciatica nerve pain. *Id*. No swelling, bruises or discoloration were observed, and Murrill's range of motion was normal in his upper and lower extremities. *Id*. On a 10-point rating scale, Murrill was documented as having reported a pain level of three and denied any recent falls. *Id*. Murrill already had active prescriptions for Baclofen, Tylenol Extra Strength, ibuprofen, and muscle rub. *Id.* Adebayo educated Murrill on administering his medications as ordered; he expressed his understanding and returned to his housing unit in stable condition. *Id*.

On February 11, 2023, Murrill submitted a sick call slip stating he kept losing his balance and falling and had broken ribs. ECF No. 39-6 at 7. He also requested a refill of hydrochlorothiazide ("HCTZ") to treat his blood pressure. *Id*. Murrill did not appear for his

February 21, 2023, sick call appointment, which was scheduled in response to this request. ECF No. 39-5 at 9.

On February 23, 2023, Murrill was provided medication to treat his high blood pressure: 30 tabs of nifedipine and 30 tabs HCTZ to KOP. ECF No. 39-6 at 27. Throughout February of 2023, Murrill was administered Baclofen 20 mg twice per day ("BID")[3] and his mental health medications, Zoloft, Prazosin, and Abilify. *Id*. at 28.

Simo saw Murrill on March 3, 2023, for a physical. ECF No. 39-2, ¶ 7. His blood pressure was elevated at 152/95 and he reported that he had not taken his medications that day. *Id*. He requested a cane to assist with walking due to a right hip replacement and reported he had lost his cane during his transfer to JCI. *Id*. Simo recorded that Murrill was noncompliant with medications and ordered labs and an EKG. *Id*. At the time, Murrill had active prescriptions for muscle rub, Tylenol Extra Strength, ibuprofen, and Baclofen for chronic pain. *Id*. He was also prescribed Claritin and Nasacort for allergic rhinitis, Tums and Prilosec for gastroesophageal reflux disease ("GERD"), Nifedipine Extended Release and HCTZ for high blood pressure (hypertension or "HTN"), and Abilify, prazosin, and Zoloft for mental health diagnoses of PTSD and paranoid schizophrenia. *Id*. Simo prescribed tolnaftate 1% cream for tinea pedis (athlete's foot) and ordered Adacel (tetanus, diphtheria, and whooping cough) and Shingrix (shingles) vaccinations. *Id.*

On March 30, 2023, Murrill was evaluated by RNP Lum Maximuangu during a Chronic Care Clinic ("CCC") visit. ECF No. 39-4 at 28-33. At that time, Murrill reported he had bad sciatica and that his left leg/thigh/buttocks were numb, his pain was at a level 4 on the 1-10 scale, and was not relieved by his current medications. *Id.* Murrill also reported a neck injury from many years ago from an attack and advised that he sustained a pinched nerve and had neck stiffness that

[3] BID stands for the Latin "bis in die", which translates to "twice a day."

worsened over time, as well as pain that radiated to the toes of his right foot. *Id*. Murrill stated that he had left his cane during his last transfer and requested another one for lower back pain affecting the lower extremity. *Id*. Murrill's gait appeared steady without a limp or deformity, and his joints were stable, with no swelling. His neurovascular checks were within normal limits. *Id*. Murrill's blood pressure was initially measured as 152/107 and then 149/90 on recheck. *Id*. During this visit, Murrill reported both that he had stopped taking his medications and had forgotten his medications that day. *Id*. Murrill's labs were reviewed and new labs ordered. *Id.* Maximuangu noted Murrill was noncompliant with his blood pressure medication and encouraged his compliance. *Id*. Murrill's GERD was stable and controlled on omeprazole. *Id*. His allergic rhinitis was also stable with medication. *Id*. Maximuangu ordered the next CCC visit in three months. *Id.*

Throughout March 2023, Murrill was administered Baclofen, Zoloft, Abilify, and Prazosin. ECF No. 39-6 at 26. On April 3, 2023, he received 30 tabs of Claritin, 60 tabs of Tylenol, 1 tube of Nasacort, 60 tabs of Motrin, 30 tabs of Tums, 30 caps of Prilosec, 30 tabs of HCTZ, and 30 tabs of Nifedipine—all KOP. *Id*. at 23-24.

On April 6, 2023, RN Kwami Komla evaluated Murrill for injuries from an altercation. ECF No. 39-4 at 25-26. Murrill reported he suffered a busted lip from a strong-arm robbery by three other inmates. *Id*. He had lacerations on his upper lip and right knee, which were cleansed and bandaged. *Id*. He did not report any pain and stated he had Baclofen, Tylenol, and ibuprofen in his cell which he could take when he returned to his cell. *Id.*

On April 11, 2023, Adebayo evaluated Murrill on a follow up after the assault. ECF No. 39-4 at 22-23. Adebayo observed a dry abrasion on the right knee and bruises on the abdomen. *Id*. The knee abrasion was cleaned and Bacitracin applied. *Id*. Murrill denied any stabbing or head injury, abdominal or chest discomfort, shortness of breath, headache, dizziness, or chest pain. *Id.*

Adebayo advised Murrill to return to medical for any concerns and he verbalized understanding. *Id*. There is no indication in Adebayo's note that Murrill reported to her that he did not receive or have access to his medications. *Id.*

In April and May 2023, Murrill was administered Baclofen, Elavil, Zoloft, Prazosin, and Abilify. ECF No. 39-6 at 21-22, 25. On June 2, 2023, Murrill did not appear for a sick call scheduled in response to his complaints of a broken back. ECF No. 39-4 at 21. On June 13, 2023, he submitted a sick call form stating he had right upper calf pain. ECF No. 39-6 at 6. On June 16, 2023, he received 30 tabs of amoxicillin and 15 tabs of ibuprofen, KOP. *Id*. at 19-20. Two days later, he received 42 tabs of Motrin and 28 tabs of amoxicillin, KOP. *Id*. at 16-17.

On June 19, 2023, Murrill failed to appear for his appointment with CRNP Ikanke Edem for complaints of severe headache. ECF No. 39-4 at 20. The June 2023 MARs show that on June 16, 2023, Murrill received 30 tabs of amoxicillin and 15 tabs of ibuprofen, KOP. ECF No. 39-2, ¶ 9. On June 18, 2023, he received 42 tabs of Motrin and 28 tabs of amoxicillin, KOP. *Id.*

Simo next saw Murrill on June 23, 2023, for a provider sick call due to his complaint of back and calf pain. ECF No. 39-2 at ¶ 8. Murrill complained of constant right upper back pain that radiated to the calf with intermittent numbness to the right lower extremity. *Id.* He reported the pain worsened when walking, bending, and standing, and improved with pain medications, which he requested to increase. *Id.* No musculoskeletal swelling was observed, and it was noted he used a cane. *Id*. Simo examined Murrill's cervical, thoracic, and lumbar spine, as well as his shoulders, elbows, hands, hips, ribs, pelvis, knees, feet, and ankles, which were all normal. *Id*. Simo assessed Murrill to suffer from chronic pain due to reported trauma. She continued Murrill's current pain management regimen, and referred him to the next CCC. *Id*. At that time, Murrill had active prescriptions for Elavil, Baclofen, ibuprofen, and Tylenol Extra Strength for pain and

muscle spasms through July 27, 2023. *Id*. He was also prescribed HCTZ and nifedipine for HTN until July 27, 2023. *Id*. Simo expressly denies that Murrill told her during this encounter, or at any other time, that he was not receiving his medications. *Id*. ¶ 5. She explains that, had Murrill had told her he was not receiving his medications, she would have documented it in her note and followed up to make sure he received his prescribed medications. *Id*.

On June 28, 2023, Murrill was provided with 30 tabs of HCTZ and 30 tabs of nifedipine, KOP. ECF No. 39-6 at 15-16. Throughout June 2023, he was administered Baclofen, Elavil, Prazosin, Abilify, and Zoloft. *Id*. at 18-19. On July 3, 2023, Murrill failed to appear for his appointment with NP Maximuangu. ECF No. 39-4 at 14. That same day, he received 30 tabs of Tylenol, KOP (ECF No. 39-6 at 13) and submitted a medication refill request, seeking a refill of his nasal spray only. ECF No. 36 at 715. On July 19, 2023, he, again, failed to appear for an appointment, this time scheduled with NP Simo regarding his complaints of back pain. ECF No. 39-4 at 13.

Throughout July 2023, Murrill was administered Prazosin, Zoloft, and Abilify and was also administered Baclofen and Elavil until those prescriptions expired on July 27, 2023. ECF No. 39-6 at 12. In August and September 2023, Murrill was administered Prazosin, Zoloft, and Abilify. *Id*. at 10-11. Murrill submitted sick call slips on August 24, 2023, and September 14, 2023. ECF No. 36 at 713-714. Neither referenced his medication issues. *Id.*

On October 3, 2023, Hayden Patino, DDS submitted a consultation request for Murrill to go to the University of Maryland Oral and Maxillofacial Surgery Department for evaluation and treatment of a cystic lesion on his right anterior mandible. ECF No. 39-4 at 9-11. The request was approved. *Id*. The same day, Murrill received 30 tabs of Tylenol, KOP. ECF No. 39-6 at 8. On October 5, 2023, Murrill filed a sick call slip requesting, among other things, Baclofen; however,

for unknown reasons, that request was not received for processing until November 7, 2023. ECF No. 36 at 681.

On October 16, 2023, at 2:03 p.m., RN Adebayo saw Murrill after he reported he had fallen that morning, hitting the right side of his cheek on the toilet. ECF No. 39-4 at 7-8. Murrill was alert, verbally responsive, and not in distress. *Id*. His cheek was swollen and Murrill reported that he could not chew or swallow. *Id*. Murrill's blood pressure was elevated at 213/120. Adebayo referred Murrill to the JCI dispensary to see a provider for further evaluation. *Id*.

On October 17, 2023, at 12:13 a.m., NP Kaddie Kallon evaluated Murrill due to reports of that Murrill was observed falling face down as a result of "having seizures." ECF No. 39-4 at 2-4. Murrill did not have any active bleeding but reported painful teeth, gums, and mouth. *Id*. Kallon sent Murrill to the emergency room to rule out a head injury and mandibular/jaw fracture. *Id*. Murrill was seen at Baltimore Washington Medical Center ("BWMC") where he reported he has sciatica and fell due to the pain. ECF No. 39-5 at 19-25. Murrill was diagnosed with bilateral mandible fractures with minimal displacement. *Id*. PA-C Felicia Pryor discussed the case with several maxillofacial surgeons. *Id*. After multiple phone calls with multiple facilities, BWMC was unable to transfer Murrill for care. *Id*. Pryor discussed Murrill's care with maxillofacial surgeon Dr. Garden, who opined that outpatient treatment at the infirmary and scheduling Murrill as an outpatient was appropriate. *Id*. Accordingly, Murrill was discharged from the emergency room to the Jessup Regional Infirmary ("JRI"). ECF No. 39-3 at 35; ECF No. 3904 at 1.

On October 18, 2023, NP Cynthia Okonkwo submitted a consultation request for surgical repair of the bilateral mandibular fracture by an oral and maxillofacial surgeon ("OMFS"), which was approved. ECF No. 39-3 at 30-34. Surgery was scheduled for December 13, 2023, but the hospital did not notify the surgeon, and the surgery had to be rescheduled. *Id*. at 23. The surgeon

then requested Murrill have additional CT scans before the surgery, which further delayed the surgery, as that request navigated the approval and scheduling processes. ECF No. 39-3 at 2-11, 17-22; ECF No. 39-6 at 29-35; ECF No. 39-7 at 5-6.

On February 10, 2024, Murrill was transferred from JCI to ECI-East. ECF No. 39-3 at 12. Eventually, Murrill had surgery on March 10, 2025. ECF No. 37-7 at 1-4.

### B. Warden Dean's Response

Warden Dean explains that JCI personnel are not involved in the medical care of inmates. ECF No 35-4, ¶ 4. JCI personnel defer to the judgment of the medical contractors who are responsible for providing medical treatment, including communicating and scheduling procedures with outside medical facilities. *Id*. ¶¶ 4-6. Dean avers that JCI staff do not have authority to order medical staff to perform any particular medical procedure or render any particular treatment. *Id*., ¶ 4. Further, JCI correctional staff are not responsible for monitoring the provision of medical services to inmates; and when an inmate files a complaint about medical care, the reports, assessment and judgments of the medical staff are relied upon to respond to those complaints. *Id.* ¶¶ 4, 7. Finally, Dean avers that JCI staff do not interfere with, hinder, or delay medical care to inmates. *Id*., ¶ 8

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

Defendants' Motions are styled as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters

outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56." Importantly, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d); *Adams Hous., LLC v. City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (*per curiam*). As is the case here, when a movant titles its motion "in the alternative" for summary judgment, and submits matters outside the pleadings for the Court's consideration, the parties are deemed on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, FEDERAL PRACTICE & PROC. § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

**B. Discovery**

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016)

(*per curiam*); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. FED. R. CIV. P. 56(d); *see also Harrods Ltd.*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs. LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-movant's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-movant asserts that discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "failure to file an affidavit … is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods Ltd.*, 302 F.3d at 244 (citations omitted). Despite the absence of a Rule 56(d) affidavit, the Court shall not issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit places "'great weight'" on the Rule 56(d) affidavit, and holds that mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods Ltd.*, 302 F.3d at 244–45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Here, Murrill attached a Rule 56(d) declaration to his supplemental Complaint in advance of the instant Motions, which is to say the declaration is not in response to any pending motion for dispositive relief. ECF No. 17-2. The form declaration asserts Murrill requires discovery (to respond to Defendants' motion for summary judgment, which had not yet been filed) because he needs to explore the mindset of Defendants regarding whether they knew he needed his medication. *Id*. As explained, Murrill's declaration is not responsive to any of Defendants' dispositive motions. More to the point, Murrill's complete medical record, including sick call slips and medication renewal requests, are available to him and have been provided to the Court. Murrill does not explain what additional discovery, if any, is necessary to respond to the Motion or otherwise to demonstrate Defendants' awareness of relevant circumstances, including related to his access to medication prior to his fall. As such, the request for discovery is denied and the Court

will consider Defendants' Motions as motions for summary judgment and consider evidence outside of the operative pleadings.

### C. Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)). The Court "view[s] the evidence in the light most favorable to … the nonmovant, and draw[s] all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002); *see F.D.I.C. v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015); *In re French*, 499 F.3d 345, 352

(4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644–45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

To defeat summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact. *See Anderson*, 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. Importantly, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Murrill is self-represented, his submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the Court must abide the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## IV. DISCUSSION

Defendant Warden Dean seeks dismissal of the Amended Complaint, or summary judgment in his favor, on the following grounds: Eleventh Amendment Immunity; failure to allege personal involvement; failure to state an Eighth Amendment claim; and qualified immunity. ECF

No 35. Medical Defendants argue Murrill fails to state an Eighth Amendment claim against them and they are otherwise entitled to summary judgment. ECF No. 39-1; ECF No. 46.

For the reasons explained below, the Court finds there is no genuine dispute of material fact (*i.e.,* Murrill fails to generate a triable issue) and all movants are entitled to judgment as a matter of law.

**A. Supervisory Liability**

Defendant Dean asserts that Murrill fails to allege either personal involvement or supervisory liability which is a required element of a § 1983 action. ECF No. 35.

Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, deprives her "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (holding that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show the official acted personally to deprive plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

Murrill's claims against Warden Dean rely on a theory of *respondeat superior*. That is, Murrill seeks to impose liability on Warden Dean on the basis of his status as a supervisor. As relayed above, it is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *Love-Lane*, 355 F.3d at 782. Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege: (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Here, Murrill has simply made vague allegations of failures to train and to supervise as a basis for his claims against Warden Dean.

There is no dispute of fact that Warden Dean is not a licensed health care professional, does not have responsibility to ensure medical care is provided to prisoners, and does not oversee

medical personnel. In view of the undisputed facts, construed liberally in favor of Murrill, Warden Dean's limited role does not give rise to personal liability for unconstitutionally inadequate medical care. The record before the court is that Warden Dean did not investigate Murrill's substantive complaints regarding his medical care; nor was he otherwise involved with the provision of medical care. *See Chukwurah v. Corizon Health Care,* No. CV PX-22-212, 2023 WL 4268556, at *6 (D. Md. June 29, 2023) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation) (citing *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.")), *aff'd,* No. 23-6716, 2024 WL 1405885 (4th Cir. Apr. 2, 2024).

As reflected above, Rule 56(c) places the burden on the party responding to a motion for summary judgment (here, Murrill) to show that a fact is genuinely disputed by "citing to particular parts of materials in the record [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c). On the record before the Court, there is no opposition to Warden Dean's statement that he was not responsible for supervising Murrill's medical care and there is no evidence that Murrill filed any grievances prior to his fall that would have alerted Warden Dean that Murrill did not have access to his prescribed medication, as he alleges. Further, correctional personnel generally are not liable for deliberate indifference when medical staff make the challenged decisions about medical care. *See Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990) (noting that a warden was entitled to rely upon the health care providers' expertise); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (stating that "[i]f a prisoner is under the care of medical

experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 678 (W.D. Va. 2001) ("Prison personnel may rely on opinion of the medical staff as to the proper course of treatment.").

Murrill has failed to generate a dispute of fact on these material matters. *See Robinson v. Priority Auto. Huntersville, Inc.,* 70 F.4th 776, 780 (4th Cir. 2023) (stating that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations" to succeed on summary judgment). Warden Dean's motion for summary judgment will be granted.[4]

**B. Eighth Amendment**

Medical Defendants contend they are entitled to summary judgment because they were not deliberately indifferent to Murrill's serious medical need. To state an Eighth Amendment, claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure(s) to act, amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). A claim of deliberate indifference to a serious medical requires proof that (i) objectively, the prisoner plaintiff suffered from a serious medical need; and (ii) subjectively, prison staff were aware of the need for medical attention but failed either to provide it or to ensure it was available. *Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Proof of an objectively serious medical condition, however, does not end the inquiry.

[4]Accordingly, the Court need not reach Warden Dean's additional arguments.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839, 840; *Anderson*, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew about at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)); *see also Jackson*, 775 F.3d at 179 (physician's act of

prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk).

Medical Defendants do not dispute that Murrill's sciatica, hypertension and fractured jaw each constitutes a serious medical need. Therefore, the Court turns to the question of whether the record supports a finding that any named Medical Defendant acted with deliberate indifference.

Murrill asserts that, after he was transferred to segregation on April 6, 2023, he was without his KOP medication, which included medication to treat his high blood pressure, and that he was unable to access his prescribed Balcofen, a muscle relaxer to treat his sciatic pain. He claims that because he did not have access to this medication, he had a "sciatic seizure" resulting in his falling and breaking his jaw. He specifically claims that he told each of the named medical providers that he did not have access to these medications. Taking Murrill's allegations as true, that he told each of the medical providers of his lack of access to his medicine, his claim nevertheless fails.

Murrill was transferred to segregation on April 6, 2023; he asserts he advised Adebayo on April 11, 2023, of his issues with his medication. Based on the undisputed medical records, there is no genuine dispute that Adebayo examined Murrill on April 11, 2023; and the record is devoid of any suggestion that Murrill voiced concern about access to his prescribed medication. To the contrary, Murrill's undisputed medical records are plain that he had been issued a 30-day supply of his blood pressure medications (KOP) on April 3, 2023, and received Baclofen (DOT) throughout April and May, despite the fact that he was housed on segregation.

Murrill alleges he advised Simo of his medication access problems on June 23, 2023; she attests expressly that he did not do so. The undisputed medical records demonstrate Murrill submitted a number of sick calls in June of 2023, none of which referred medication access problems. And, contrary to his assertions that he was entirely without his prescribed medication

from his assignment to segregation housing in early April until his fall in October, the June 2023 MAR provides that he received his high blood pressure medication (KOP) on June 28, 2023, and that he was provided Baclofen (DOT) throughout that month.

Additionally, the uncontroverted medical records show, and suggest no dispute, that Murrill failed to appear for scheduled appointments in July of 2023 and, on July 3 of that year, submitted a medication refill request seeking only a refill of his nasal spray. The undisputed records are that he received Balcofen and his blood pressure medications until his prescriptions expired on July 27, 2023.

The record is clear that Murrill submitted sick call slips in August and September 2023 but neither references issues with his medication or access to same. His October 5, 2023, sick call slip (dated October 4, 2023), does inclide a request for, among other things, Baclofen, but—as mentioned above—that was not received for processing until November 7, 2023, after his fall.[5]

The undisputed record is that, at the time Murrill claims he told Adebayo and Simo of the issues with receiving his medication, he had been provided all of his prescribed medications. As such, nothing before the Court provides a foundation on which any reasonable conclusion could be based that either of these Defendants was subjectively aware that Murrill was not receiving or did not have access to his prescribed medication. Further, assuming true that Murrill told Kallon, after his fall, that his medication had been disrupted did not provide Kallon sufficient notice for her to take corrective action. Specifically, based on the record before the Court, it appears that Murrill's prescriptions for his blood pressure medications and Balcofen expired at the end of July 2023; but, between that time and his fall in October, the record does not reflect that he notified

[5] Murrill asserts he advised NP Kallon on October 17, 2023, that he did not have his blood pressure medication or Baclofen, but Murrill's encounter with Kallon occurred after his fall. *Id*.

anyone that he was without his medication, excepting the October sick call slip that was not timely processed (and which was not processed by any named Defendant). In short, even accepting as true the allegation that Murrill told each Medical Defendant on at least one occasion that he did not have access to his prescribed medications, the record is insufficient to demonstrate deliberate indifference to a serious medical need against the backdrop of his undisputed medical records that he received the medications as prescribed. Thus, they are entitled to summary judgment.

To the extent Murrill claims that any named Defendant is responsible for the delay in his surgery to repair his fractured jaw, he fails to provide factual allegations to support such a claim against any named Defendant. There is simply no indication in the record that any named Defendant was responsible for submitting consultation requests, approving consultation requests, or scheduling Murrill's surgery. *See Trulock*, 275 F.3d at 402.

**VI. CONCLUSION**

For the foregoing reasons, Defendants' Motions, construed as Motions for Summary Judgment, will be granted. Judgment shall be entered in movant Defendants' favor and against Murrill. ECF No. 35, 39, 46. Warden Dean's Motion to Seal, ECF No. 37, will be granted. The Motion to Withdraw Attorney (ECF No. 45) will be granted. Murrill's Motion to Respond (ECF No. 48) will be denied as moot. Warden Dean's Motions to Strike (ECF Nos. 53 and 56) will be denied.

A separate Order follows.

September 2, 2026

/S/
____________________________
Julie R. Rubin
United States District Judge